```
              IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                        DIVISION OF ST. CROIX


KENRICK MOTTLEY                    :        CIVIL ACTION
                                  :
            v.                    :
                                  :
MAXIM CRANE WORKS HOLDING,        :
INC., et al.                      :        NO. 2006-78
```

                          MEMORANDUM

Bartle, C.J.                                    December 9, 2008

        Before the court is the motion of defendant Maxim Crane

Works, L.P. ("Maxim") to dismiss the complaint for lack of

personal jurisdiction under Rule 12(b)(2) of the Federal Rules of

Civil Procedure, or in the alternative to dismiss pursuant to the

Virgin Islands Worker's Compensation Act, V.I. Code Ann. tit. 24,

§ 261(b)(1).  The parties have taken discovery on the question of

personal jurisdiction.[1]

        Plaintiff Kenrick Mottley ("Mottley") initiated this

diversity action seeking damages for injuries he sustained in

2006 when he was sprayed with transmission fluid from a high-

pressure leak while servicing a crane as part of his employment.

At the time of the accident, Mottley was employed as a crane

mechanic by Anthony Crane International, L.P. ("Anthony"), a

contractor at the HOVENSA oil refinery on St. Croix.  Mottley now

---

1.  Defendant Maxim Crane Works Holding, Inc. ("Holding"), a
corporation which indirectly owns 100% of Maxim, joined in
Maxim's motion to dismiss on the same grounds.  Plaintiff does
not oppose the grant of the motion to dismiss with respect to
Holding.

asserts one count of negligence against Maxim, which owns 99% of Anthony.  Maxim is a Pennsylvania limited partnership with its principal place of business in Bridgeville, Pennsylvania.

I.

Where the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing, through sworn affidavits or other competent evidence, that jurisdiction can be properly exercised.  Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros. Inc., 983 F.2d 551, 554 (3d Cir. 1993); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must make a two-part inquiry.  See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998).  First, the court must look to the relevant long-arm statute of the forum to determine if it permits the exercise of personal jurisdiction over the defendant.  IMO Indus. at 259. Second, the court must determine whether exercising personal jurisdiction would comport with the requirements of the Due Process Clause of the United States Constitution.  Id.

The long-arm statute of the Virgin Islands provides in relevant part:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this
territory;

(2) contracting to supply services or
things in this territory;

(3) causing tortious injury by an act or
omission in this territory;

(4) causing tortious injury in this
territory by an act or omission outside
this territory if he regularly does or
solicits business, or engages in any
other persistent course of conduct, or
derives substantial revenue from goods
used or consumed or services rendered,
in this territory;

...

(b) When jurisdiction over a person is based
solely upon this section, only a claim for
relief arising from acts enumerated in this
section may be asserted against him.

V.I. Code Ann. tit. 5, § 4903.  This court has interpreted § 4903

to permit personal jurisdiction over a non-resident to the

fullest extent allowed under the Constitution.  Unlimited

Holdings, Inc. v. Bertram Yacht, Inc., No. 2005-46, 2008 WL

2235337, at *3 (D.V.I. May 29, 2008); Urgent v. Tech. Assistance

Bureau, 255 F. Supp. 2d 532, 534-36 (D.V.I. 2003).

The Constitutional due process requirements serve to

"shield[] persons from the judgment of a forum with which they

have established no substantial ties or relationship."  Gen.

Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Thus,

the exercise of personal jurisdiction depends upon "the

relationship among the defendant, the forum, and the litigation."

Shaffer v. Heitner, 433 U.S. 186, 204 (1977).  "Federal courts

have recognized two types of personal jurisdiction which comport

-3-

with these due process principles:  general and specific jurisdiction." Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984)).  General jurisdiction occurs when a non-resident defendant's contacts with the forum are "continuous and substantial."  Id.  Specific jurisdiction exists when the cause of action "arises from or relates to conduct purposely directed at the forum state."  Id. (citation omitted).  In the present matter, Mottley relies only on a theory of specific jurisdiction over Maxim.

Whether a court can properly exercise specific jurisdiction is determined by a three-part inquiry.  Id.  First, "the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  Next, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities.  Id. (citing Helicopteros, 466 U.S. at 414).  Finally, the exercise of personal jurisdiction must "comport[] with fair play and substantial justice."  Id. (quoting Burger King, 471 U.S. at 476).  "To defeat jurisdiction based on this fairness inquiry, a defendant must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable."  Miller Yacht Sales, Inc. v. Smith,
384 F.3d 93, 97 (3d Cir. 2004) (citations omitted).

II.

Mottley argues that various contacts between Maxim
employees and the St. Croix refinery subject Maxim to specific
personal jurisdiction in the Virgin Islands in the present
matter.

First, Mottley points to the employment of Danny
Satterfield ("Satterfield") as a service manager of the crane
repair shop at the St. Croix refinery where Mottley worked.
Mottley comes forth with evidence that Satterfield was a Maxim
employee responsible for managing the entire shop and supervising
all of the mechanics there, including him.  According to Mottley,
Satterfield was a Maxim employee from the time he was transferred
to the St. Croix facility in October, 2005 until January, 2006,
at which time he became an Anthony employee.  In support, Mottley
cites deposition testimony from Joseph Vaccarello ("Vaccarello"),
the Chief Financial Officer and Rule 30(b)(6) deponent of Maxim.
Vaccarello acknowledged Satterfield's name on a list of Maxim
employees who had visited the refinery between 2004 and 2006,
confirmed that Satterfield was employed as a service manager
there, and estimated that Satterfield became an Anthony employee
in January, 2006.  Maxim takes issue with the notion that
Satterfield did not become an Anthony employee until January,
2006.  Instead, it cites to the affidavit of Thomas Liston,
Maxim's Director of Human Resources to show that Satterfield left

-5-

the employ of Maxim and joined Anthony immediately upon his
transfer from Maxim's Atlanta, Georgia office to the St. Croix
refinery on September 17, 2005.  The date that Satterfield became
an Anthony employee is thus a disputed question of fact.  Our
Court of Appeals has instructed that "courts reviewing a motion
to dismiss a case for lack of in personam jurisdiction must ...
construe disputed facts in favor of the plaintiff." Carteret
Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 (3d Cir. 1992)
(citations omitted); Miller Yacht, 384 F.3d at 97 (citations
omitted).  For present purposes, therefore, we must accept as
true plaintiff's evidence that Satterfield worked at the St.
Croix refinery as a Maxim employee until January, 2006.

          Mottley also relies on the visits to the St. Croix
refinery by Mark Ulmer ("Ulmer"), a regional safety inspector
employed by Maxim, during the time period when Mottley was
injured.  Maxim concedes that Ulmer conducted periodic safety
audits at the St. Croix refinery and that during these audits,
Ulmer would inspect the shop equipment and facilities, and
observe the mechanics.

          Finally, Mottley cites the contacts of Maxim employees
Joseph Connelly ("Connelly") and James Workman ("Workman").  In
his declaration, Gerald Bingham, an Anthony general manager at
the St. Croix refinery, states:

> 3.  While I was employed at Anthony Crane,
> Joseph Connelly, a Maxim Crane Works, L.P.
> senior vice-president, was in charge of crane
> operations at the refinery.  Between 1998 and
> December 2006, Connelly directed, monitored,
> and reviewed all crane operations at the

refinery, including crane maintenance at the
heavy equipment shop.  He was also
responsible for safety and safety audits.
Connelly was based in Pittsburgh, but we
exchanged email on a daily basis concerning
crane maintenance and operations.  Our email
discussions often included safety issues.
Connelly was on site at the refinery two
times a month, for approximately three to
five days at a time.

4.  In May 2005, James Workman, a Maxim Crane
Works, L.P. regional vice-president,
officially took over Connelly's
responsibilities for crane operations at the
refinery.  However, Connelly continued to
exercise day-to-day control over the
operations.  Workman visited the refinery
monthly for three to five days at a time.

Bingham Decl. at ¶¶ 3-4.  Maxim does not dispute these facts.

Based on these contacts, Mottley asserts that Maxim
controlled the area where he worked and directly supervised what
he did.  He alleges that this control gave Maxim a duty of
reasonable care toward him, which Maxim breached by failing to:
(1) inform him of the dangers presented by the toxic fluid; (2)
provide him with protective gear and cleaning agents; and (3)
ensure that he received immediate medical attention after the
exposure.  Mottley maintains that his injuries were a result of
Maxim's negligent failure to discharge these duties.

III.

We must now determine whether these contacts between
Maxim and the Virgin Islands are sufficient to permit this court
to exercise jurisdiction over Maxim in this matter.  Even if we
disregard Mottley's evidence as to Satterfield, we conclude that
he has satisfied the requirements of the Virgin Islands long-arm

statute.  Mottley has established that his claim for relief arises out of Maxim's "causing tortious injury by an act or omission in this territory."  V.I. Code Ann. tit. 5, § 4903(a)(3).[2]

Next, we must consider the three requirements imposed by the United States Constitution.  First, we address whether the presence of Ulmer, Connelly and Workman as Maxim employees at the St. Croix refinery constitutes minimum contacts with the Virgin Islands such that Maxim can be said to have purposefully availed itself of the privilege of conducting activities within the territory.  Kehm Oil, 537 F.3d at 300.  Maxim's concession that its employees conducted periodic safety audits at the refinery and the unrebutted testimony of Bingham regarding Connelly and Workman's pervasive presence and influence at the refinery assure us that Maxim engaged in conduct deliberately directed at the Virgin Islands.

We now turn to the question of whether the injury to Mottley arises out of or relates to at least one of Maxim's minimum contacts with the Virgin Islands.  Id.  Our Court of Appeals has expressly eschewed the use of a single standard that can be mechanically applied in each case.  Instead, the court has explained that the determination of this nexus requirement is a "fact-sensitive inquiry [which] should hew closely to the

---

2.  As noted earlier, this court has previously interpreted § 4903 to permit jurisdiction over a non-resident to the fullest extent allowed under the Constitution of the United States. E.g., Unlimited Holdings, No. 2005-46, 2008 WL 2235337, at *3.

-8-

reciprocity principle upon which specific jurisdiction rests."
In particular, we focus on "the animating principle behind the
relatedness requirement[, which] is the notion of a tacit quid
pro quo that makes litigation in the forum reasonably
foreseeable."  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d
312, 322 (3d Cir. 2007).  Here, Maxim could reasonably foresee
being subject to jurisdiction in the Virgin Island with respect
to issues of safety at the St. Croix refinery.  Again, even
ignoring the evidence with regard to Satterfield, it is
undisputed that various Maxim employees were heavily involved in
the refinery's day-to-day operations which included matters of
safety.

     Finally, we must decide whether asserting personal
jurisdiction over Maxim in the Virgin Islands comports with
traditional notions of fair play and substantial justice.  Burger
King, 471 U.S. at 476.  "To defeat jurisdiction based on this
fairness inquiry, a defendant must present a compelling case that
the presence of some other considerations would render
jurisdiction unreasonable."  Miller Yacht, 384 F.3d at 97
(citations omitted).  Among the other considerations a district
court may analyze are the following factors:  (1) the burden of
the defendant; (2) the forum's interest in adjudicating the
dispute; (3) the plaintiff's interest in obtaining the most
efficient resolution of controversies; and (4) the shared
interest of the several forums in furthering fundamental social
policies.  Id. (citations omitted).  Maxim has not argued that

-9-

these considerations or any other would make the exercise of
jurisdiction over them by this court unfair, and we conclude that
the Constitutional standard is met.  The burden on the defendant
of litigating in the Virgin Islands is low in light of the
repeated forays by its employees into this forum.  In contrast,
the interest of the Virgin Islands and Mottley in adjudicating
the dispute here is high, since the alleged tort occurred in St.
Croix and Mottley is a resident here.

      Maxim makes an additional argument that it is not
subject to jurisdiction in the Virgin Islands under Mottley's
alleged theory of negligence because Mottley has not shown that
Maxim owed him any duty with respect to safety measures.  The
question of duty is not relevant to our determination of the
jurisdictional question at hand.  Rather, it goes to the merits
of the case.  Our Court of Appeals has cautioned that it is
"premature and unwise" to evaluate the merits of a tort claim
during a jurisdictional inquiry, and we will refrain from doing
so.  Carteret, 954 F.2d at 148.

      We therefore hold, on the basis of the record before
us, that Mottley has shown that Maxim is subject to personal
jurisdiction in the Virgin Islands with respect to the present
negligence action.

IV.

      Maxim additionally argues that Mottley's claim against
it is barred by the Virgin Islands Worker's Compensation Act
("WCA"), V.I. Code Ann. tit. 24, § 250, et seq.  The WCA

-10-

immunizes an employer insured under the Act from tort liability to an injured employee.  Id. at § 261(b)(1).  Maxim's contention that it is shielded from liability under the WCA, however, is based on the supposition that Mottley would rely on an alter ego theory of liability to impute Anthony's contacts with the Virgin Islands to its parent company.  Such an imputation, according to Maxim, would effectively convert Maxim into Mottley's employer whereupon it would be entitled to the same immunity granted to Anthony under the WCA.  Regardless of the merits of that argument, Mottley has not relied on such a theory but has instead rested its jurisdictional argument on Maxim's own contacts with the forum.  The WCA is clear that in an instance where a third party is responsible for the injury, "the injured workman or employee or his beneficiaries may claim and recover damages from the third person responsible for said injury."  Id. at § 263.

V.

In sum, the motion of defendants Maxim and Holdings to dismiss will be granted with respect to Holdings and denied with respect to Maxim.

-11-